IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES LEFFERT<br><br>     *Plaintiff,*<br><br> v.<br><br>WALMART INC.,<br><br>     *Defendant.* | CIVIL ACTION<br>NO. 23-2815 |

**PAPPERT, J.**                                                                                                      **December 20, 2023**

## MEMORANDUM

  Charles Leffert worked at Walmart as an overnight stocker. He missed numerous days of work to care for his wife, who has epilepsy, and told other Walmart employees the reasons for his absence. Walmart fired Leffert after approximately two months of work, purportedly because he accumulated too many absences. Leffert sued Walmart for disability and gender discrimination, and disability and gender retaliation. In addition to contending he was illegally terminated, Leffert also alleges his nightshift coach made inappropriate comments to him and his male colleagues, and treated him and his male coworkers differently than their female peers.

  Walmart moved to dismiss Leffert's complaint. The Court grants the motion in part and denies it in part, allowing Leffert to amend his pleading.

1

I

In November 2022, Walmart hired Leffert as an overnight stocker. (Compl. ¶¶ 20-21; 41, ECF 1). That same month, Leffert told a Walmart "Lead," Jessie, that Leffert's wife had epilepsy and that he would need to take off work to provide care when his wife's normal caregiver was unable to do so. (*Id.* ¶24). Following Jessie's instructions, Leffert called the Walmart hotline on a few occasions when he needed to miss work. (*Id.* at ¶¶ 26-27). Leffert ultimately missed six days of work to care for his wife. (*Id.* at ¶ 27). On a shift before each absence, Leffert tried to tell his nightshift coach, Heather, why he would be absent, but she was dismissive of his attempts to do so. (*Id.* at ¶ 36).

Heather also made comments that she disliked men and nitpicked her male subordinates' work product, treating the male workers differently than female counterparts. (*Id.* at ¶¶ 32-35). In December 2022, Heather made an inappropriate comment about male genitalia to another male coworker in front of Leffert which shocked him, though he did not complain. (*Id.* at ¶ 36).

Walmart fired Leffert on January 8, 2023 for violating the company's absentee policy—despite the fact Leffert had not previously been warned about any attendance issues. (*Id.* at ¶ 28). The following Monday Leffert called Walmart's Human Resources Department and complained about his termination to Walmart employee Doug, who said he would look into the matter, but never got back to Leffert. (*Id.* at ¶ 29).

Leffert sued Walmart alleging: disability discrimination under the Americans with Disability Act (ADA) and Pennsylvania Human Relations Act (PHRA) (Counts I and II), gender discrimination under Title VII and the PHRA (Counts III and IV),

disability retaliation under the ADA and PHRA (Count V and part of Count VI), and gender retaliation under the PHRA and Title VII (part of Count VI and Count VII).

## II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

III

A

The ADA allows non-disabled individuals to bring discrimination claims "based on their association with disabled individuals." *Addiction Specialists, Inc. v. Twp. Of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005). To state a claim for discrimination on the basis of an associational disability under the ADA and PHRA,[1] Leffert must sufficiently allege (1) he was qualified for the job at the time of the adverse employment action; (2) he was subjected to an adverse employment action; (3) the employer knew at the time that Leffert had a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Dodson v. Coatesville Hospital Corp.*, 773 F.App'x 78, 83 n.8 (3d Cir. 2019).

Taking Leffert's allegations as true, he was qualified for the job, and Walmart was aware of his wife's epilepsy when it fired him. *See* (Compl. ¶¶ 24, 26-27, 41, 53). Based on the facts alleged, the Court can also reasonably infer that his wife's epilepsy could have motivated Walmart's termination decision. Leffert told Jessie that Leffert's wife had epilepsy and he would need to take off work on occasion to care for her, (*Id.* at ¶ 24), and notified his nightshift coach, Heather, about the reasons for his absences. (*Id.* at ¶ 27). Leffert had not been disciplined or warned about attendance issues prior to his termination. (*Id.* at ¶ 28). These allegations allow the reasonable inference that

---

[1] The Court will analyze both disability discrimination counts (Counts I and II) together, and both disability retaliation counts (Count V and part of Count VI) together because the ADA and PHRA statutes are "to be interpreted consistently" and "have the same standard of liability." *Macfarlan v. Ivy Hill SNF, LLC,* 675 F.3d 266, 274 (3d Cir. 2012); *see also Dodson v. Coatesville Hospital Corp.*, 773 F.App'x 78, 83 (3d Cir. 2019) (requiring the same *prima facie* case for an associational discrimination claim under the ADA and PHRA).

4

Leffert's wife's disability played a role in Walmart's decision to fire him, as opposed to the stated reason that he violated the "absentee policy and accumulated points for absences that warranted termination." (*Id.* at ¶ 28).

B

To establish a *prima facie case* of gender discrimination under Title VII,[2] a plaintiff must (1) be a member of a protected class, (2) be qualified for the position, (3) subjected to an adverse employment action, and (4) show the adverse action occurred under circumstances that give rise to an inference of discrimination. *McCormick v. Allegheny Valley Sch.*, 2008 WL 355617, at *8 (E.D. Pa. Feb. 6, 2008). To state a claim, Leffert must only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of" these elements. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

Leffert claims Heather stated she disliked men, and treated female workers more favorably in instances such as when she forced Leffert to move a palette. (Compl. ¶¶ 34–35). Leffert also alleges Heather frequently talked in a rude and condescending tone, nitpicked her male subordinates at work and made an inappropriate comment about male genitalia to another male coworker, James, in front of Leffert. (*Id.* at ¶¶ 35–36).

Leffert's allegations do not support an inference that Heather's discriminatory comments were connected to his termination. Although Heather was Leffert's

---

[2] Courts also construe Title VII and parallel PHRA claims consistently. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) ("We construe Title VII and the PHRA consistently."); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) ("The analysis of [Title VII and PHRA] claims is identical."). The Court will analyze both gender discrimination counts together (Counts III and IV), and both gender retaliation counts (part of Count VI and Count VII) together.

nightshift coach and was the one who told him he had been fired, Leffert alleges no facts which could show Heather made the decision to terminate him, or that there was any connection between Heather's comments and his firing.

Leffert also does not state a plausible claim that similarly situated female employees were treated more favorably than him. "While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Here, Leffert alleges only what Heather did to and said about male employees. *See* (Compl. ¶¶ 31–36).

C

To state a claim for disability retaliation under the ADA and PHRA, Leffert must allege facts which establish: "(1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with [his] protected activity, and (3) a causal connection between [his] protected activity and the employer's adverse action." *Krouse v. Am Sterilizer C.*, 126 F.3d 494, 500 (3d Cir. 1997).

Protected activities under the ADA generally include: (1) opposition to a practice made unlawful under the ADA; and (2) participation in an ADA investigation, proceeding, or hearing by making a charge, testifying, or otherwise assisting in the investigation." *Kanuka v. Good Shepherd Home*, 2006 WL 2380387, at *9 (E.D. Pa. Aug. 15, 2006) (citing 42 U.S.C. § 12203(a)).

Leffert believes telling Walmart, specifically his "Lead" Jessie, about his wife's disability constituted protected activity. (Compl. ¶ 24; Resp. to Mot. to Dismiss, p. 10, ECF 7–1). But this disclosure alone does not constitute "engaging in a protected

activity because it is neither an act of participating in a proceeding under the ADA, nor an opposition to discrimination made unlawful by the ADA." *Brown v. Vanguard Group*, 2017 WL 412802, *17 (E.D. Pa. Jan. 30, 2017).

D

Leffert states a claim for gender retaliation under Title VII and the PHRA if he alleges facts to show: (1) he engaged in conduct protected by Title VII; (2) Walmart took an adverse action against him; and (3) a causal link between his protected conduct and the adverse action. *Connelly*, 809 F.3d 780, 789 (3d Cir. 2016). "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citation omitted).

Leffert argues he engaged in protected activity under Title VII when "he complained to [Walmart] regarding [Walmart's] discriminatory treatment" and when he "opposed Heather's discriminatory comment about male genitalia." (Resp. to Mot. to Dismiss, p. 11, ECF 7-1). Neither states a plausible gender retaliation claim. His interactions with Heather do not include any alleged protected activity. While Leffert was "shocked and offended by" Heather's comments about male genitalia, he "did not complain" about them. (*Id*. at ¶ 36). And while Leffert alleges protected activity when he complained to Walmart employee Doug about his termination, that complaint could not have caused his termination because he had already been fired. *See* (*Id*. at ¶ 29),

7

IV

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The decision of whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

Granting leave to amend would not cause undue delay or prejudice, and the Court cannot say at this point that amendment would be futile. Leffert may amend his complaint if he can allege facts which could overcome the shortcomings identified in this Memorandum.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.